UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Lisa Knispel and Karen Brandelik,
individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.                                                                                  Honorable Sean F. Cox

Chrysler Group LLC,                                             Case No. 11-11886

      Defendant.
_____/

### OPINION & ORDER

Plaintiffs filed this action under the federal Fair Labor Standards Act ("FLSA"), seeking to pursue a collective action against Defendant Chrysler on behalf of similarly situated non-union contract employees. Plaintiffs claim that Chrysler has violated by the Act by failing and refusing to pay such employees overtime pay for actual overtime hours worked.

A collective action is different than a class action in that the members have to opt-in and then become party plaintiffs. As explained below, under the existing law of the Sixth Circuit, there is a two-stage procedure for these collective actions. Only the first stage is at issue here. This stage occurs very early on in the case, at the start of the discovery. At this first stage, the district court only determines whether or not the suit should be conditionally certified as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to join the action. There is a lenient standard at this first stage. The second stage occurs much later, after plaintiffs have opted in and after discovery. At that second stage, which

1

is more akin to class certification under FED. R. CIV. P. 23, the court considers much more closely whether the action should proceed as a collective action.

For the reasons set forth below, the Court concludes that Plaintiffs have met the lenient standard at this first stage and the Court shall therefore conditionally certify this as a collective action so that notice can be issued. The Court shall deny without prejudice Plaintiffs' request for equitable tolling. The Court shall order counsel to meet and confer in order to draft a proposed notice that comports with this Opinion & Order. Finally, the Court shall order Defendant to gather, and provide to Plaintiffs counsel, the contact information for the putative class members.

## BACKGROUND

Plaintiffs Lisa Knispel and Karen Brandelik filed this FLSA action, seeking to pursue a collective action against Defendant Chrysler Group, LLC on behalf of similarly situated non-union contract employees.

In the First Amended Collective Action Complaint, Plaintiffs "allege on behalf of themselves and all similarly-situated non-union contract employees hired from various contract houses ("Class") that the Defendant CHRYSLER unlawfully failed and refused to pay Plaintiffs and members of the Plaintiff Class overtime pay for overtime worked, notwithstanding that Plaintiffs and members of the Plaintiff Class were and are paid hourly and are not and have not been exempt from overtime pay." (Am. Compl. at ¶ 3).

Plaintiffs allege that from at least November 15, 2009, to the present, Defendant has contracted with several "contract houses" for contract employees to provide hourly labor, paid hourly, in a variety of Defendant's offices and manufacturing plants nationwide, and in foreign countries, including Canada and Mexico. (Am. Compl. at ¶ 15). Karen Brandelik ("Brandelik")

and Lisa Knispel ("Knispel") were two such contract employees.  Plaintiffs allege that, at all

relevant times, Defendant had "a policy and practice of failing and refusing to pay overtime to its

contract employees for their hours worked in excess of forty (40) hours per week."  (Am. Compl.

at ¶ 61).  Plaintiffs allege that Defendant has several policies and practices that violate the FLSA:

1) requiring contract employees to submit time records reflecting only their non-overtime hours

worked; 2) maintaining a timekeeping system (the "S.T.E.P." program) which prevents contract

employees from documenting their overtime hours worked; 3) requiring contract employees to

take compensatory time off in lieu of paying overtime; 4) requiring contract employees to work

without breaks or lunch; and 5) requiring contract employees to travel between worksites or

engage in overnight travel without hourly compensation.  (*See, e.g.* Am. Compl. at ¶ 43-45 &

48).

Another Plaintiff, Monica Lopez Vega ("Vega"), opted into this action after the Amended

Complaint was filed.

In Plaintiffs' Motion for Conditional Certification And Judicial Notice (Docket Entry No.

35), Plaintiffs ask this Court to grant conditional certification of the following collective class:

> All persons who are or have been employed by or worked for Chrysler Group
> LLC in the capacity of non-union contract employees compensated on an hourly
> basis during any time from May 22, 2009[1] forward.  As used in this pleading,
> Chrysler Group LLC includes its predecessor, NewCarCo Acquisition LLC, and
> any other entity operating the subject business from May 22, 2009 forward.

(*Id*. at 1).  In support of the motion, Plaintiffs submitted Affidavits from Brandelik (Ex. A to Pls.'

Motion); Knispel (Ex. B to Pls.' Motion); and Vega (Ex. C to Pls.' Motion).

---

[1]At the hearing, counsel agreed that this date should actually be June 10, 2009.

**ANALYSIS**

**I.    Motion For Conditional Certification**

Before determining whether to grant conditional certification, a brief review of the basic governing principles is appropriate.

**A.    Basic Principles**

Among other things, the Fair Labor Standards Act ("FLSA") requires employers to pay time-and-a-half for non-exempt employee labor exceeding forty hours per week. 29 U.S.C. § 207. Section 216 of the FLSA provides that employees can sue on their own behalf and on behalf of "similarly situated" persons. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); 29 U.S.C. § 216(b). Such actions brought under § 216(b) are called "collective actions" and they differ from class actions:

> Unlike class actions under FED. R. CIV. P. 23, collective actions under FLSA require putative class members to opt into the class. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought."). These opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action.

*O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009). "Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer,* 454 F.3d at 546.

Most United States Courts of Appeals, including the Sixth Circuit, have approved of a "two-tier" procedure for certification of collective actions under § 216(b) that involves: 1) a motion for conditional certification at the "notice" stage of the proceedings; and 2) a later

4

"decertification stage."  2 WAGE AND HOUR LAW § 20:19.50, *Private collective actions; Comer*,

454 F.3d at 546.

### 1.    First Or "Notice" Stage Of Proceedings.

The first stage of 216(b) certification, also known as the notice stage, takes place very

early in the litigation; i.e., "at the beginning of discovery." *Comer,* 454 F.3d at 546; *Fisher v.*

*Michigan Bell Tele. Co.*, 665 F.Supp.2d 819, 825 (E.D. Mich. 2009).  It is here where the district

court determines whether the suit should be conditionally certified as a collective action so that

potential opt-in plaintiffs can be notified of the suit's existence and of their right to join the

action.  *Fisher*, 665 F.Supp.2d at 825.

To be considered "similarly situated," it is sufficient if the plaintiffs' claims are "unified

by common theories of defendants' statutory violations, even if the proofs of those theories are

inevitably individualized and distinct."  *O'Brien,* 575 F.3d  at 585; *Fisher*, 665 F.Supp.2d at 825.

During this first stage, the district court does not resolve factual disputes, decide

substantive issues going to the ultimate merits, or make credibility determinations.  *Fisher,* 665

F.Supp.2d at 825.  The first stage is "fairly lenient," and because authorization of notice "need

only be based on a modest factual showing," the determination typically results in conditional

certification of a representative class.  *Comer*, 454 F.3d at 547; *see also* 2 WAGE AND HOUR LAW

§ 20:19.50, *Private collective actions* ("The plaintiffs' initial standard is not difficult to satisfy,

and Courts generally are quite lenient in allowing collective actions to proceed" and "[a]s a

practical matter, most requests for treatment as a collective action are granted by the Courts,

subject to a subsequent motion to decertify the class filed by the Defendant.")

Notably, at this early notice stage, the certification is conditional and "by no means final."

*Comer*, 454 F.3d at 546.

## 2.      Second Or "Decertification" Stage.

The second stage occurs much later than the first stage; "after all of the opt-in forms have been received and discovery has been concluded." *Comer,* 454 F.3d at 546.

At the second stage, sometimes referred to as the "decertification stage," the defendant will often move to decertify the class, arguing "that the opt-in plaintiffs are not 'similarly situated' with the named plaintiffs and therefore that class treatment is inappropriate." 2 WAGE AND HOUR LAW § 20:19.50, *Private collective actions.*

At this "second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer,* 454 F.3d at 547. At this later stage, the district court has much more information upon which to make that decision and its employs a stricter standard than it did in the first stage. *Id.* The analysis at the second stage is more akin to class certification under FED. R. CIV. P. 23, but the Sixth Circuit has stated that it involves a less stringent criteria than Rule 23. *O'Brien,* 575 F.3d at 584.

In determining whether the class members are similarly situated at the second stage, courts generally consider: 1) the factual and employment settings of the individual plaintiffs; 2) the likely defenses that appear to be individual to each plaintiff; and 3) the degree of fairness and the procedural impact of resolving the claims collectively. *O'Brien,* 575 F.3d at 584-85.

In practice, "[d]ecertification actions are frequently successful." 2 WAGE AND HOUR LAW § 20:19.50, *Private collective actions; see, e.g., White v. Baptist Mem. Health Care Corp.,* 2011 WL 1883959 (W.D. Tenn. 2011) (where trial court granted motion for conditional certification at stage one and then, at stage two, granted the defendants' motion to decertify the class). In

addition, an action can be partially decertified at the second stage, if only a subset can establish that they are similarly situated.  *O'Brien*, 575 F.3d at 586 ("The option of partial certification is important to consider, because it counters the argument that a collective action must be totally decertified if some members are not similarly situated to the others.").  "When a collective action is decertified, the opt-in plaintiffs are dismissed [without prejudice] and the named plaintiffs maintain individual actions."  2 WAGE AND HOUR LAW § 20:19.50, *Private collective actions.*

> **B.     Ruling On Request For Conditional Certification**

Plaintiffs' motion involves only the first or "notice" stage and thus seeks only conditional certification.

Again, the first stage is "fairly lenient," and authorization of notice "need only be based on a modest factual showing."  *Comer*, 454 F.3d at 547**.**  District courts generally allow the lead plaintiffs to show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Wlotkowski,* 267 F.R.D. at 217.

To be considered "similarly situated," it is sufficient if the plaintiffs' claims are "unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct."  *O'Brien,* 575 F.3d  at 585; *Fisher*, 665 F.Supp.2d at 825. "This is a sufficient but not a necessary condition for a finding that a group of employees is similarly situated." *Wlotkowski,* 267 F.R.D. at 217.

Here, Plaintiffs assert that they can meet their burden at this first stage by making a modest factual showing that their claims are unified by common theories of Defendant's violations:

. . . Chrysler required Plaintiffs and other non-union contract employees to engage in the following activities:

(a) draft written time-sheets and then re-write them to remove overtime hours worked;

(b) enter hours worked into an electronic timekeeping system, called STEP, that prevented the entry of overtime hours worked;

(c) track their own overtime in separate documents that could not be and were not entered into Chrysler's record-keeping system;

(d) work without breaks or lunch;

(e) travel between worksites, take special one-day trips, and engage in overnight travel without hourly compensation;

(f) take compensatory time, when approved by Chrysler, rather than receiving overtime wages due; and/or

(g) accept compensation that did not reflect overtime hours actually worked.

. . . . Plaintiffs have alleged that the above types of misconduct were committed as a policy, plan, and practice of Chrysler and applied to non-union contract employees.

(Pls.' Br. at 2-3).[2]

The Court concludes that Plaintiffs have met the lenient standard for this first stage.

Despite Defendant's arguments to the contrary, Plaintiffs have made a "modest factual showing"

that they and potential plaintiffs were similarly-situated victims of a common policy of

Defendant's that violated the FLSA, in failing or refusing to pay contract employees for overtime

hours worked.  Although their job duties vary, the Affidavits of the named Plaintiffs (Brandelik

and Knispel), and the one opt-in Plaintiff (Vega), state that they all worked for Defendant within

the last three years and were contract employees that were paid hourly.  The Court concludes that

---

[2]The Court will not address any new alleged common theories set forth for the first time in Plaintiffs' Reply Brief.

Plaintiffs have made a modest factual showing that they were victims of several[3] of the alleged

policies or practices of Defendant in denying them overtime pay:

> **1)**   **Requiring contract employees to submit time records reflecting only
> their non-overtime hours worked:** *See e.g.*, Brandelik Affidavit at ¶ 13
> (stating that after Brandelik submitted her written timesheet to her
> supervisor, her supervisor told her she could not report more than eight
> hours of work per day and then altered her timesheet to falsely reflect less
> than the hours that she worked); Knispel Affidavit at ¶ 6 (stating that
> Knispel's supervisor rejected the timesheets she submitted because they
> contained overtime hours and required Knispel to re-write her timesheets
> and remove the overtime hours she worked).

> **2)**   **Requiring contract employees to take compensatory time off in lieu of
> paying overtime:** *See, e.g.*, Knispel Affidavit at ¶ 8 (stating that Knispel's
> supervisor required non-union contract employees to track their own
> overtime hours to submit them for compensatory time off); Vega Affidavit
> at ¶ 12 (stating her supervisor granted her compensatory time off in lieu of
> overtime pay for overtime hours worked).

> **3)**   **Requiring contract employees to work without breaks or lunch:** *See,
> e.g.*, Brandelik Affidavit at ¶ 12 (stating she was often required to work
> without lunch breaks or other breaks); Knispel Affidavit at ¶ 17 (same);
> Vega Affidavit at ¶ 7 (same).

> **4)**   **Requiring contract employees to travel between worksites or engage in
> overnight travel without hourly compensation:** *See, e.g.*, Knispel
> Affidavit at ¶¶ 10-15 (stating that Defendant did not pay her overtime pay
> for overtime hours she worked when she was required to travel, which was
> often between 10 and 28 hours per week); Vega Affidavit at ¶ 6 (stating
> that Vega's manager told her, on the first day that she started work for
> Defendant, that she would not receive overtime pay despite required
> overtime for travel and other duties).

Many of Defendant's various arguments in opposing this motion, such as factual disputes

---

[3]The Court concludes that Plaintiffs have not made a sufficient factual showing regarding
the alleged general policy or practice of having employees enter hours worked into an electronic
timekeeping system (called STEP) that prevented the entry of overtime hours worked.

and its reliance upon evidence showing that it paid significant amounts of money to contract employees for overtime work, can be disposed of rather easily, in light of the fact that "[a]t this first stage, the district court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Fisher,* 665 F.Supp.2d at 825.

Other arguments made in opposition to the motion also fail. Defendant asks the Court to deny this motion because it would be unmanageable. However, Defendant offers no Sixth Circuit authority for its position that manageability should be considered at this first stage. Defendant will have the opportunity to make this argument at the second stage. *See, e.g. White v. Baptist Mem'l Health Care Corp.*, 2011 WL 1883959 (W.D. Tenn. 2011) (granting conditional certification and then decertifying the action at stage two).

Defendant also asserts that the Court should deny the motion because Plaintiffs have not established that there are others who wish to join this action. While the Eleventh Circuit has found that to be an appropriate consideration (*see Dyback v. State of Florida Dept. Of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)), to date, the Sixth Circuit has not taken that position.

Accordingly, this Court shall grant conditional certification at stage one. Such a ruling is "by no means final." Defendant will have the opportunity to raise its arguments at stage two and, if successful, the action may either be decertified entirely or only a subset could be allowed to proceed.

## II.     Plaintiffs' Request For Equitable Tolling

"Under the FLSA, a lawsuit to recover unpaid compensation must 'be commenced within two years after the cause of action accrued,' unless the cause of action arose 'out of willful

10

violation,' in which case the lawsuit must 'be commenced within three years after the cause of action accrued.' 29 U.S.C. § 255(a)." *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008).

In this action, the parties agreed that the statute of limitations would be "tolled as to the putative opt-ins as pled in Plaintiffs' First Amended Complaint commencing at the time Plaintiffs file their motion for conditional certification until 30 days following the submission of Defendant's brief in opposition to Plaintiffs' Motion for Conditional Certification." (Docket Entry No. 36 at 2).

In their motion, Plaintiffs now ask the Court to equitably toll the limitations period for future opt-in Plaintiffs "until the opt-in notice period has expired." (Pls.' Br. at 17). In support of their request, Plaintiffs direct the Court to a single case wherein equitable tolling was applied at the certification stage in an FLSA case, *Wlotkowski, supra*. In *Wlotkowski,* the district stated, in a footnote, that "the Court tolled the statute of limitations for all putative collective class members from September 15, 2009 to January 15, 2010." *Wlotkowski,* 267 F.R.D. at 214 n.1. The opinion does not explain why the limitations period was tolled during that time period and it is clear that the court did not toll the limitations period until the end of the opt-in notice period. In fact, the docket in that case reflects that the limitations period was tolled because the parties so stipulated. (*See* Docket Entry Nos. 50 & 51 in Case No. 09-11898).

Although equitable tolling is potentially available in an FLSA case, the doctrine is "to be carefully applied." *Hughes,* 542 F.3d at 187. To determine whether to apply equitable tolling to time-barred claims, courts consider: 1) the petitioner's lack of notice of the filing requirement; 2) the petitioner's lack of constructive knowledge of the filing requirement; 3) diligence in pursuing

11

one's rights; 4) absence of prejudice to the respondent; and 5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Id.*

As at least two district courts within the Sixth Circuit have recognized, the above five-factor test simply is not "suitable for preemptive, one-size-fits-all application to a group of as-yet-unidentified potential plaintiffs." *Matthews v. ALC Partner, Inc.*, 2009 WL 2591497 (E.D. Mich. 2009, J. Murphy); *see also Noble v. Serco, Inc.*, 2009 WL 3254143 (E.D. Ky. 2009). This Court shall follow the same approach taken in *Matthews:*

> [T]he Court will not enter an order equitably tolling the statute of limitations at this time. If and when potential plaintiffs whose claims would otherwise be time-barred choose to opt in to the class, they may apprise the Court of their circumstances and individually move for equitable tolling.

*Matthews, supra*, at *8.

Accordingly, the Court shall deny without prejudice Plaintiffs' request as to equitable tolling for the putative opt-in Plaintiffs.

## III.    Notice Of Lawsuit And Consent To Participate

Courts may facilitate FLSA collective actions by authorizing notice of the suit to potential plaintiffs. *See Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989). Having determined that conditional certification is warranted, this Court has the discretion to authorize written notice to similarly situated individuals, to "allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

Here, the parties appear to agree that a written notice is warranted upon conditional certification. They disagree, however, as to the contents of the notice. Attached to Plaintiffs' Motion, as Exhibit E, are: 1) the notice that Plaintiffs propose be sent to the potential opt-in

12

Plaintiffs; and 2) a later "reminder notice" that Plaintiffs propose be sent to those same individuals. Defendants object to numerous portions of the notices proposed by Plaintiffs and submitted their own proposed notice. In addition, at the hearing, the Court discussed several of the issues regarding the notice.

Having reviewed the notices proposed by the parties, and having considered the issues raised by same, the Court makes the following rulings.

The Supreme Court has commented that, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche, Inc.*, 493 U.S. at 174. The purpose of the notice is to provide potential plaintiffs with a neutral discussion of the nature of the action. *Id.* In that regard, the Court concludes that the statement indicating that the Court has not taken a position as to the litigation should appear on the first page of the notice. The case caption shall not appear on the notice. The Court also concludes that the notice should have a more balanced statement of Defendant's position in this litigation – consisting of more than a single line indicating Defendant denies the allegations.

Defendant contends that the notice should advise of potential discovery and trial obligations. The Court agrees that inclusion of a statement advising that person who opts in may be required to respond to written discovery, sit for a deposition, or testify at trial, is appropriate. Such information allows potential plaintiffs to make an informed decision as to whether they wish to opt-in to the action. *See, e.g., Snide v. Discount Drug Mart, Inc.*, 2011 WL 5434016 at *6-7 (N.D. Ohio 2011); *Heaps v. Safelite Solutions*, *LLC*, 2011 WL 1325207 at *8 (S.D. Ohio 2011); *Baden-Winterwood v. Life Time Fitness*, 2006 WL 2225825 at *2 (S.D. Ohio 2006).

Several courts, including district courts within the Sixth Circuit, have "held that potential

13

plaintiffs, in order to make an informed decision about whether to opt-in, should be made aware that there is a possibility that they may be liable for a defendant's costs of litigation." *Snide v. Discount Drug Mart*, 2011 WL 5434016 (N.D. Ohio 2011); *see also Baden-Winterwood v. Life Time Fitness*, 2006 WL 2225825 (S.D. Ohio 2006). The Court agrees that the notice should include this information.

Plaintiffs' proposed notice gives putative class members 90 days to respond. Defendant asserts that 45 days is more appropriate. The Court finds that a period of 45 days is sufficient in this action, especially considering the statute of limitations concerns raised by Plaintiff's counsel. The notice should therefore state that the potential plaintiffs shall have 45 days to return their consent form.

There shall not be any "reminder notice" provided. Plaintiffs have requested such reminder notices in other cases in this district and those requests have been denied because they are unnecessary and could potentially be interpreted as encouragement by the Court to join the lawsuit. *See, e.g. Wlotkowski v. Michigan Bell Tele. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010, J. Edmunds). This Court agrees that a reminder notice is unnecessary. The purpose of the notice is to inform potential opt-in Plaintiffs of their rights. Once they receive that information, "it is their responsibility to act as they see fit." *Id.* For the same reason, the Court also concludes that the notice should not contain a statement indicating that "no further notice shall be given."

Defendant contends that the notice should not include language indicating that persons who opt-in to this action will be represented by Plaintiffs' Counsel. The Court disagrees. The notice need not state that individual plaintiffs may join this lawsuit but have their own lawyer. "In the interest of ease of case management," the Court concludes the better course is to have "any

14

individual plaintiffs seeking FLSA recovery under the core of operative facts at issue in this litigation, but through the representation of different counsel," file a separate action. *Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 500 (D. Neb. 2009). Such separate actions can be reassigned to this Court as companion cases to this action.

Finally, the notice shall include an appropriate statement, in capital letters, advising persons receiving the notice not to contact the Court with questions about the notice.

Given the above rulings and directives, the Court shall order counsel to meet and confer, within 10 days of this Opinion & Order, in an attempt to reach full agreement on appropriate language for the Notice and Consent Form. Within 10 days of this Opinion & Order, counsel shall fill a joint proposed Notice and Consent Form. Any specific language that remains in dispute shall be noted, and the Court will resolve any remaining disputes.

In addition, within 14 days of this Opinion & Order, Defendant shall gather and provide to Plaintiffs' Counsel, a list of the names and last known addresses of the putative class members, along with each individual's dates of employment and the name of the contract house supplying that individual to Defendant.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiffs' Motion for Conditional Certification is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that the Court CONDITIONALLY CERTIFIES this action as a collective action so that notice can be issued.

The Court DENIES WITHOUT PREJUDICE Plaintiffs' request for equitable tolling.

IT IS FURTHER ORDERED that, given the Court's rulings and directives regarding the

15

notice, counsel shall meet and confer, within 10 days of this Opinion & Order, in an attempt to reach full agreement on appropriate language for the Notice and Consent Form. Within 10 days of this Opinion & Order, counsel shall fill a joint proposed Notice and Consent Form. Any specific language that remains in dispute shall be noted, and the Court will resolve any remaining disputes.

IT IS FURTHER ORDERED that, within 14 days of this Opinion & Order, Defendant shall gather and provide to Plaintiffs' Counsel, a list of the names and last known addresses of the putative class members, along with each individual's dates of employment and the name of the contract house supplying that individual as a contract worker to Defendant.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 21, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 21, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

16